UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK LEGAL ASSISTANCE GROUP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 26 Civ. 3201 |

## PRELIMINARY STATEMENT

1. This action is brought under the Freedom of Information Act ("FOIA"), challenging the failure of the U.S. Department of Homeland Security ("DHS"), the U.S. Citizenship and Immigration Services ("USCIS"), and the U.S. Department of Housing and Urban Development ("HUD") to provide records relating to a joint memorandum issued by DHS and HUD signed on March 24, 2025, entitled "American Housing Programs for American Citizens," as required by 5 U.S.C. § 552(a)(3) and 38 C.F.R. § 1.550 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C § 1391(e).

## PARTIES

4.    Plaintiff the New York Legal Assistance Group ("NYLAG") is a nonprofit organization in New York City that provides free civil legal services to low-income New Yorkers in the areas of government benefits, consumer debt, disability rights, family law, housing law, special education, and immigration, among others.

5.    NYLAG is one of the largest immigration services providers in New York City, providing a wide range of legal services specific to immigrants. NYLAG also provides legal assistance to thousands of public housing assistance beneficiaries.

6.    Defendants DHS, USCIS, and HUD are agencies of the United States government within the meaning of 5 U.S.C. § 552(f)(1).

7.    Defendant DHS is a department within the executive branch of the United States government, with its principal place of business at 2707 Martin Luther King Jr. Ave. SE, Washington, D.C. DHS is responsible for public security in the United States.

8.    DHS is made up of various operational and support components, including Defendant USCIS, and each component has a FOIA office to process records for that component. 6 C.F.R. § 5.3.

9.    Defendant USCIS is a component of DHS and is the federal agency that oversees lawful immigration to the United States.

10.    Defendant HUD is a department within the executive branch of the United States government, with its principal place of business at 451 7th St. SW, Washington, D.C. HUD administers programs that provide housing and community development assistance.

11.    Defendants have possession of and control over the records NYLAG seeks under 5 U.S.C. § 552(a)(3).

2

**STATEMENT OF FACTS**

**I.    Statutory Background**

12.    FOIA requires DHS (and its components, including USCIS) and HUD to produce requested records. That statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

13.    DHS, USCIS, and HUD must respond to FOIA requests within twenty business days. 5 U.S.C. § 552(a)(6)(A)(i). In the event of "unusual circumstances," DHS, USCIS, and HUD may seek to extend this deadline by an additional ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

14.    When an agency fails to respond to a requester within the twenty-business-day time limit, or thirty-business-day time limit if granted an extension, the FOIA statute treats the requester as having constructively exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C).

15.    Defendant DHS operates under a decentralized FOIA system where each component processes requests for its own records. 6 C.F.R. § 5.1.

16.    When a DHS component receives a FOIA request for records in its possession, it must determine whether another component or federal agency is better able to determine whether the record is exempt from disclosure and whether it should be disclosed. If the receiving component determines it is not best able to process the record, it may either respond after consulting with the component best able to determine disclosure or refer the responsibility for responding to that component. 6 C.F.R. § 5.4.

17.     For purposes of assessing relevant deadlines under FOIA, all FOIA requests received by DHS that are subject to consultations with or referrals to other components or agencies are treated as having been received on the initial receipt date by the first component or agency. *Id.*

## II.     HUD and DHS Memorandum of Understanding

18.     On March 24, 2025, HUD Secretary Scott Turner and DHS Secretary Kristi Noem signed the "American Housing Programs for American Citizens" Memorandum of Understanding ("MOU").[1]

19.     The MOU describes a new agreement between DHS and HUD to identify noncitizens who are ineligible for federal housing assistance. As part of the new agreement, HUD agreed to appoint a full-time staff member to assist in operations at a so-called "Incident Command Center." There is no publicly available information about whether such a HUD or DHS "Incident Command Center" currently exists, or what its responsibilities are. The purpose of the full-time staff member, described in the MOU as a "Liaison," is to establish an interagency partnership between DHS and HUD and facilitate data sharing between the two agencies.[2]

20.     Neither DHS nor HUD has disclosed any information about the agencies' information sharing policies and practices. Specifically, DHS and HUD have not shared the name and official duties of the Liaison, have not provided any information relating to any other agency employee tasked with establishing lines of communication between DHS and HUD for the purpose of sharing immigration status information belonging to federal assistance recipients, and have not

---

[1] Memorandum of Understanding Between the U.S. Dep't of Housing & Urban Dev. & the U.S. Dep't of Homeland Security, Mar. 24, 2025, https://www.hud.gov/sites/default/files/PA/documents/DHS-HUD-MOU-032425.pdf.
[2] U.S. Dep't of Hous. & Urban Dev., Press Release No. 25-046, HUD & DHS Jointly Issue New Fair Housing Guidance to Reduce Discrimination Against Immigrants (Mar. 24, 2025), *available at* https://www.hud.gov/news/hud-no-25-046#close.

made public any manuals, policies, training, or other guidance describing measures to facilitate the sharing of immigration status information across agencies.

21.    There is an important need to inform NYLAG, its clients, and other advocates about DHS and HUD's data sharing agreement.

22.    The MOU raises concerns regarding the security of personally identifiable information and introduces uncertainty as to how advocates can maintain their confidentiality obligations under federal and local laws.

23.    NYLAG has an obligation to provide this information to its clients and community members as it directly pertains to access to public housing assistance. NYLAG's clients are in an especially vulnerable position if their immigration status is shared given current Immigration and Customs Enforcement ("ICE") activity in New York City.

24.    The public has a compelling interest in understanding whether, how, and under what circumstances HUD may share personally identifiable information with DHS.

### III.    NYLAG's FOIA Request to DHS's Components

25.    On October 28, 2025, NYLAG submitted a FOIA request to DHS's Privacy Office, attached as Exhibit A, requesting that DHS provide the following records:

a) Records relating to the Liaison. This includes the name of the Liaison, description of the staff member's official duties, and description of duties undertaken at the Incident Command Center.

b) Records relating to any other representative employed at either HUD or DHS tasked with establishing lines of communication between HUD and DHS for the purpose of sharing immigration status information belonging to federal assistance recipients

and their household members. Such records include, but are not limited to, the names of the representatives and descriptions of their official duties.

c) Records relating to the processes HUD and DHS has established to share data related to individuals' immigration status between the agencies. This includes:

I. Manuals, policies, trainings, or other guidance describing measures to facilitate and coordinate the sharing of immigration status information across agencies;

II. Manuals, policies, trainings, or other guidance describing what privacy measures are being implemented to protect personally identifiable information;

III. Communications between HUD and DHS regarding the creation of processes to identify noncitizens via information shared for the purpose of obtaining federal housing assistance.

26. By letter dated December 1, 2025, the DHS Privacy Office stated it would be transferring NYLAG's request to the FOIA Officer for U.S. Customs and Border Protection ("CBP").

27. By email dated December 17, 2025, CBP stated that NYLAG's FOIA request was closed as insufficient because the initial request lacked a valid date range. CBP requested that NYLAG resubmit the FOIA request and advised that NYLAG also submit the request with ICE due to the subject matter of the request.

28. The request specifically referenced the MOU dated March 24, 2025, and thus plainly concerned only records after that date. Nonetheless, on December 17, 2025, NYLAG

resubmitted its FOIA request to CBP and ICE, attached as Exhibit B. The request explicitly stated the date range of the records requested.

29.    On January 6, 2026, NYLAG also resubmitted its FOIA request with the explicit date range directly to DHS's Privacy Office, attached as Exhibit C (the "January 6 DHS Request").

30.    By email dated December 18, 2025, attached as Exhibit D, CBP communicated to NYLAG its determination that the records were not under the purview of CBP and recommended that NYLAG redirect the request to DHS.

31.    On December 22, 2025, NYLAG emailed the CBP FOIA Public Liaison inquiring as to the proper recipient of its FOIA request. The email explained that DHS had previously referred the request to CBP on December 1, 2025. NYLAG did not receive a response to the email.

32.    NYLAG sent a follow up email to the CBP FOIA Public Liaison on January 6, 2026, reiterating its request. NYLAG did not receive a response to the follow up email.

33.    By email to NYLAG dated January 7, 2026, attached as Exhibit E, ICE stated that the records were not under ICE'S purview and recommended that NYLAG redirect the request to DHS and HUD.

34.    By letter dated January 15, 2026, conveyed by email, the DHS Privacy Office stated it would be transferring the January 6 DHS Request to the FOIA Officer for USCIS.[3]

35.    By letter dated March 26, 2026, conveyed by postal mail, USCIS confirmed it had received the January 6 DHS Request on January 20, 2026.[4]

36.    USCIS's letter also invoked the provision of FOIA regulations that allows agencies to extend the standard twenty-business-day time period for responding to FOIA requests by an additional ten business days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B).

---

[3] *See* Exhibit F.
[4] *See* Exhibit G.

37. The January 6 DHS Request was received by DHS on January 6, 2026. DHS has not invoked any extension of the standard response deadline. Accordingly, DHS had an obligation to respond to the request within twenty business days, that is, by February 4, 2026.

38. DHS referred the January 6 DHS Request to USCIS.

39. Under DHS regulations, the referral does not reset processing time limits; all referrals are handled according to the initial receipt date by the first DHS component. 6 C.F.R. § 5.4. USCIS had an obligation to respond to the request within twenty business days, that is, by February 4, 2026. Even accepting USCIS's invocation of the ten-business-day extension for "unusual circumstances," USCIS had an obligation to respond to the request within thirty business days, that is, by February 20, 2026.

40. To date, it has been approximately 113 business days since NYLAG submitted its initial FOIA request on October 28, 2025 and 70 business days since NYLAG resubmitted its FOIA request on January 6, 2026.

41. None of the DHS components has produced any records.

## IV.    NYLAG's FOIA Request to HUD

42. On October 28, 2025, NYLAG submitted a FOIA request to HUD, attached as Exhibit A ("HUD Request"), requesting that HUD provide the following records from March 24, 2025 to the present:

   a) Records relating to the Liaison. This includes the name of the Liaison, description of the staff member's official duties, and description of duties undertaken at the Incident Command Center.

   b) Records relating to any other representative employed at either HUD or DHS tasked with establishing lines of communication between HUD and DHS for the purpose

of sharing immigration status information belonging to federal assistance recipients and their household members. Such records include, but are not limited to, the names of the representatives and descriptions of their official duties.

c) Records relating to the processes HUD and DHS has established to share data related to individuals' immigration status between the agencies. This includes:

  I. Manuals, policies, trainings, or other guidance describing measures to facilitate and coordinate the sharing of immigration status information across agencies;

  II. Manuals, policies, trainings, or other guidance describing what privacy measures are being implemented to protect personally identifiable information;

  III. Communications between HUD and DHS regarding the creation of processes to identify noncitizens via information shared for the purpose of obtaining federal housing assistance.

43. By letter dated December 5, 2025, attached as Exhibit H, the HUD FOIA Office acknowledged receipt of the HUD Request and indicated that the Department would be extending the twenty-business-day time limit for processing the request pursuant to 24 C.F.R. § 15.103(c) due to "unusual circumstances." The stated reason for the extension was the Department's lapse in appropriations from October 1, 2025, through November 12, 2025.

44. The letter included contact information should NYLAG seek to inquire about the status of its request.

45. On January 27, 2026, NYLAG sent HUD an email to the address provided to note that more than twenty business days had passed since NYLAG filed its request and to ask when it

could expect a response. HUD stated the request was with the program office and it would send a status check to the program office for further assistance.

46.    On February 10, 2026, NYLAG sent a follow up email to HUD to ask when it could expect to receive a response to its FOIA request. HUD stated that the FOIA request was pending before the Legal Department for review.

47.    On February 18, 2026, HUD sent an email asking to clarify the date range for the request. NYLAG responded on February 18, 2026 to clarify the date range.

48.    On March 4, 2026 and March 31, 2026, NYLAG sent additional follow up emails to HUD to ask when NYLAG could expect to receive a response to its FOIA request. Both times, HUD stated that the request was still being processed.

49.    The HUD Request was received by HUD on October 28, 2025. Even accepting HUD's invocation of the ten-business-day extension for "unusual circumstances," HUD had an obligation to respond to the request within thirty days, that is, by December 12, 2025.

50.    To date it has been approximately 113 business days since NYLAG submitted the HUD Request.

51.    HUD has not produced any records.

**COUNT I**
**FREEDOM OF INFORMATION ACT**
**(Against U.S. Department of Homeland Security and**
**U.S. Citizenship and Immigration Services)**

52.    NYLAG submitted a valid FOIA request to DHS on October 28, 2025, and resubmitted that request on January 6, 2026.

53.    DHS referred the January 6 DHS Request to USCIS.

54.    Defendants have a statutory obligation under 5 U.S.C. § 552(a)(3) and 5 U.S.C. § 552(a)(6)(A)(i) to produce validly requested records within twenty business days.

10

55.    Defendants failed to timely produce any records.

56.    NYLAG is entitled to injunctive and declaratory relief, as well as costs, expenses, and attorneys' fees.

**COUNT II**
**FREEDOM OF INFORMATION ACT**
**(Against U.S. Department of Housing and Urban Development)**

57.    NYLAG submitted a valid FOIA request to HUD on October 28, 2025.

58.    Defendant has a statutory obligation under 5 U.S.C. § 552(a)(3) and 5 U.S.C. § 552(a)(6)(A)(i) to produce validly requested records within twenty business days.

59.    Defendant failed to timely produce any records.

60.    NYLAG is entitled to injunctive and declaratory relief, as well as costs, expenses, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, NYLAG respectfully requests that this Court:

(A)    Declare that Defendants' failure to timely produce the records requested by NYLAG is unlawful;

(B)    Issue an injunction ordering Defendants promptly to produce to NYLAG the requested records in their entirety pursuant to 5 U.S.C. § 552(a)(4)(B);

(C)    Award NYLAG its costs, expenses, and reasonable attorneys' fees pursuant to U.S.C. § 552(a)(4)(E); and

(D)    Grant such other and further relief as this Court may deem just and proper.

11

Dated: April 20, 2026
New York, New York

By: _____
Danielle Tarantolo

NEW YORK LEGAL ASSISTANCE GROUP

Danielle Tarantolo
Julia Russell
Shannon Lee (application for admission approved; admission pending)
100 Pearl Street
New York, NY 10004
Telephone: (212) 613-5000
Fax: (212) 750-0820
Email: dtarantolo@nylag.org
        jrussell@nylag.org
        slee@nylag.org

*Attorneys for Plaintiff*

12